UNITED STATES *ex rel.* THE INTERNATIONAL CONTRACTING COMPANY *v.* LAMONT.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 689. Argued and submitted October 23, 1894. — Decided December 10, 1894.

As mandamus will only lie to enforce a ministerial duty, as distinguished from a duty that is merely discretionary, and as the duty must exist at the time when the application is made, the Secretary of War cannot be required by mandamus to sign a contract for the performance of work by a party who is already under written contract with him to perform the same work for the Government at a lower price and under different conditions.

In pursuance of an act of Congress making an appropriation for that purpose, an advertisement appeared August 6, 1892, inviting proposals for doing certain work in Gowanus Bay, New York. The work was divided into three parts, as follows: first for Bay Ridge Channel; second, for Red Hook Channel; and third, for Gowanus Creek Channel. The advertisement, moreover, stated the sums of money which were available for the work on each separate channel, and it was announced that the work must be commenced on October 1, 1892, and be completed on or before December 31, 1893. In answer to the advertisement, the relator bid upon the work. His proposition was to do it all at a uniform rate of 19.7 of a cent per cubic yard, "scow measurement," and with two dredge boats, one of which would commence work within ninety days from the awarding of the contract, and the other within

nine months thereafter. He also undertook to complete the entire work on or before June 1, 1894. In the event of an epidemic prevailing in the locality, he reserved the right to cease work until he should think it prudent to resume. The relator's bid was the lowest, and on September 22, Lieutenant-Colonel Gillespie, of the Engineer Corps, who had issued the advertisement as the Engineer and officer in charge of the work, and at whose office the bids had been opened, addressed the relator the following letter:

"NEW YORK, N. Y., *September* 22, 1892.

"Mr. Joseph Edwards, President of the International Contracting Co., 16 Exchange Place, N. Y. city.

"SIR: The proposal of the International Contracting Co., opened in this office September 14, 1892, for dredging channels in Gowanus Bay, N. Y., 19.7 cents per cubic yard, has been accepted by the Chief of Engineers, U. S. Army.

"After the contract for the work has been prepared you will be notified to call at this office to sign it.

"The regulations require that any instrument executed by an incorporated company shall be under its corporate seal, and evidence should be furnished, also under the corporate seal, as to the official character of the person by whom it is executed, and that he is duly authorized to execute the same on behalf of the corporation.

"Please furnish this office with the names and addresses of your proposed sureties, each to justify in the sum of $45,000.

"A memorandum is enclosed containing instructions for the preparation of contractors' bonds. The execution of the necessary bond, however, will be deferred until the articles of agreement have been completed in every respect.

"Very respectfully,        G. L. GILLESPIE,
"*Lt. Col. of Engineers.*"

On September 23 the Secretary of War called on the Chief of Engineers for the papers relating to the matter, and they were submitted to him. On the following day the Chief of Engineers sent this telegram to Colonel Gillespie:

" WASHINGTON, D. C., *September* 24, 1892.

" To Colonel G. L. Gillespie, Engineer, Army Buildings, White-
hall Street, New York, N. Y. :

" Do not proceed further with closing a contract with the International Dredging Company for Gowanus work until further instructions. Acknowledge receipt of this.

" TURTLE, *Engineers.*"

On October 7 the Acting Secretary of War addressed the following letter to the relator:

" *October* 7, 1892.

" GENTLEMEN : The matter of the contract for dredging in Gowanus Bay is not yet settled, and the action of the department upon the bids received has not yet been determined upon. It is respectfully suggested that if you desire to be heard upon the subject an opportunity is offered. Any representation you desire to make, either by writing or orally, by attorney or by any officer of your company, will be respectfully received and considered. It is hoped that you will be able to do this by Tuesday — certainly not later than Wednesday — of next week.

" Very respectfully,      L. A. GRANT,
" *Acting Secretary of War.*

" The International Dredging Company, Post Building, 12 to 28 Exchange Place, New York city."

The Secretary of War acted upon the papers after hearing the relator, who claimed that his bid was final and could not be reconsidered, and decided that he had the power to refuse to consummate the contract upon the following grounds:

" First, that said acceptance of the bid of the relator was not properly made and was not binding on the government.

" Second, that said bid and the bid of the W. H. Beard Dredging Company, hereafter mentioned — which was the next lowest bid — were irregular and improper, and that neither should be accepted."

Accordingly he ordered the work to be readvertised. The new advertisement appeared on October 26, 1892. It called

for proposals which differed from those contemplated by the first advertisement in several important particulars — first, in striking out the clause referring to the eight hour law ; second, in changing time for the commencement of the work, requiring it to be commenced on April 5, 1893, instead of October 1, 1892 ; and, third, by calling for its completion by August 1, 1894, instead of December 31, 1893. Pending this bid and before any adjudication on it, the relator commenced in the Supreme Court of the District of Columbia a suit to compel Mr. Elkins, then incumbent of the office of Secretary of War, to sign a contract with him for the work as covered by the first proposals and specifications, and the bid made thereunder. Before this suit was disposed of the bids under the second advertisement were opened on December 1, 1892, and it was found that the relator had again bidden for the work, this time offering to do it for 13.7 cents per cubic yard instead of 19.7 cents per cubic yard, which was his original bid. Being again the lowest bidder, he obtained the contract from the War Department for the work under the new specification. The mandamus proceeding remained pending on the docket of this court, having been brought hither from the Supreme Court of the District of Columbia. After Mr. Elkins ceased to be Secretary of War, October 23, 1893, upon suggestion by counsel for the relator that the suit had consequently abated, it was dismissed. The relator then called upon Mr. Elkins' successor, Mr. Lamont, and demanded that he should sign the contract awarding the relator the work under the first specifications. This demand the Secretary refused to comply with, in the following communication :

"WAR DEPARTMENT,
"WASHINGTON, D. C., *November* 14, 1893.

"GENTLEMEN: I have the honor to acknowledge the receipt of your communication of November 4, 1893, in which, on behalf of the International Contracting Company, you request me, ' as the Secretary of the Department of War for the time being, to execute and deliver to that company a contract conforming in all respects to the proposal filed by said company with Lieutenant-Colonel Gillespie on the 19th day of Septem-

ber, 1892, and the acceptance thereof by the Secretary of War through the acting Chief of Engineers.'

"Your request is respectfully declined for the same reasons that my predecessor declined to enter into such a contract, and the additional reason that the International Contracting Company are now under contract to do the work for about two-thirds the amount named in said proposal. I see no justification for entering into another contract with them or for paying them $100,000 more than their contract calls for.

"Very respectfully yours,
"(Signed)      DANIEL S. LAMONT,
"*Secretary of War.*"

Upon this refusal, the relator commenced proceedings by a mandamus against Secretary Lamont in the Supreme Court of the District of Columbia, to compel him to execute and deliver to the relator the contract for the work under the specifications set forth in the first advertisement, and meeting with an adverse decision, he first took his case to the Court of Appeals of the District, where the judgment below was affirmed, and thence he brought it to this court by writ of error.

*Mr. A. S. Worthington* for plaintiff in error.  *Mr. William N. Cromwell, Mr. William J. Curtis, Mr. W. W. Dudley,* and *Mr. L. T. Michner* were on his brief.

*Mr. Solicitor General Maxwell,* for defendants in error, submitted on his brief.

MR. JUSTICE WHITE, after stating the facts, delivered the opinion of the court.

Much was said in argument at bar upon the question of when a contract is to be regarded as completed under the circumstances here presented, and the discussion concerning the authority of the Secretary of War to review the action of an officer of engineers in such a case, and to direct a new adjudication, has taken a wide range. We deem the consideration of both these points unnecessary in view of the relator's

bids under the second advertisement and specifications, and his contract to do the work at a less price and under new conditions. It is elementary law that mandamus will only lie to enforce a ministerial duty, as contra-distinguished from a duty which is merely discretionary. This doctrine was clearly and fully set forth by Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cranch, 137, and has since been many times reasserted by this court. See *Kendall* v. *Stokes*, 3 How. 87; *Brashear* v. *Mason*, 6 How. 92; *Reeside* v. *Walker*, 11 How. 272; *Commissioner of Patents* v. *Whiteley*, 4 Wall. 522; *United States* v. *Seaman*, 17 How. 225, 231; *United States* v. *Guthrie*, 17 How. 284; *United States* v. *The Commissioner*, 5 Wall. 563; *Gaines* v. *Thompson*, 7 Wall. 347; *The Secretary* v. *McGarrahan*, 9 Wall. 298; *United States* v. *Schurz*, 102 U. S. 378; *Butterworth* v. *Hoe*, 112 U. S. 50; *United States* v. *Black*, 128 U. S. 40; *Commissioners of Taxing Dist. of Brownsville* v. *Loague*, 129 U. S. 493; *Noble* v. *Union River Logging Railroad*, 147 U. S. 165.

The duty to be enforced by mandamus must not only be merely ministerial, but it must be a duty which exists at the time when the application for the mandamus is made. Thus in the case of *Ex parte Rowland*, 104 U. S. 604, 612, this court, speaking through Mr. Chief Justice Waite, said: "It is settled that more cannot be required of a public officer by mandamus than the law has made it his duty to do. The object of the writ is to enforce the performance of an existing duty, not to create a new one."

Moreover, the obligation must be both peremptory, and plainly defined. The law must not only authorize the act, *Commonwealth* v. *Boutwell*, 13 Wall. 526, but it must *require* the act to be done. "A mandamus will not lie against the Secretary of the Treasury unless the laws require him to do what he is asked in the petition to be made to do," *Reeside* v. *Walker*, 11 How. 272; see also *Secretary* v. *McGarrahan*, 9 Wall. 298; and the duty must be "clear and indisputable." *Knox County Commissioners* v. *Aspinwall*, 24 How. 376. Now, at the time that this application was made for a mandamus against Secretary Lamont, the relator had entered into

a contract to do the work in question at a lower price than that mentioned in the first advertisement and bid, and on different terms. This contract had been entered into by him voluntarily. We cannot perceive any duty which under these circumstances rested upon the Secretary of War to sign such a contract with the relator as would be required by the mandamus which is prayed. It cannot be reasonably contended that he is under any obligation to sign two contracts with the same person for the same work at a different price and under different conditions. Nor can it be urged with any greater reason that the relator was entitled to have signed a contract to do work for 19.7 cents per cubic yard, which he had subsequently made a voluntary contract to do for 13.7 cents per cubic yard, and upon conditions different from those mentioned in his first proposal. In order to justify the issue of the writ, then, it would be necessary for us to hold that the second contract was void, and thereby to relieve the relator from obligations which he has assumed, and release him from the binding force of terms and stipulations to which he has subjected himself. Inasmuch as no such duty as that which the granting of this writ would seek to enforce exists, and no right subsists in the relator which this writ could secure him, there is no ground for issuing it. The writ of mandamus cannot be used to set aside a contract which has been voluntarily entered into. *Detroit Free Press Co.* v. *Board of Auditors*, 47 Michigan, 135.

But even if the writ of mandamus could be so perverted as to make it serve the purposes of an ordinary suit, the relator is in no position to avail himself of such relief. He entered of his own accord into the second contract and has acted under it and has taken advantages which resulted from his action under it, having received the compensation which was to be paid under its terms. Having done all this, he is estopped from denying the validity of the contract. *Oregonian Railway* v. *Oregon Railway*, 10 Sawyer, 464. Nor does the fact that in making his second contract, the relator protested that he had rights under the first better his position. If he had any such rights and desired to maintain them, he should have

abstained from putting himself in a position where he voluntarily took advantage of the second opportunity to secure the work. A party cannot avoid the legal consequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences. In the case of *The Bank of the United States* v. *The Bank of Washington*, 6 Pet. 8, certain payments had been made to the first bank upon a decision by the court below, with notice that the payer intended to take the case to the Supreme Court of the United States, and would expect the payee, the Bank of the United States, to refund the money if that court should reverse the decision of the court below, and hold that it was not due. The court said: "No notice whatever could change the rights of the parties so as to make the Bank of the United States responsible to refund the money."

The whole case of this relator is covered by *Gilbert* v. *United States*, 8 Wall. 358, in which this court, through Mr. Justice Miller, said: "If the claimants had any objection to the provisions of the contract they signed, they should have refused to make it. Having made it and executed it, their mouths are closed against any denial that it superseded all previous arrangements." The claim that the purpose of the mandamus which is here asked is not to determine the existence of a contract, or of rights arising thereunder, but only to require the furnishing of evidence, simply changes the form of the contention without affecting its real merits. If, as we have shown, there is no duty resting upon the Secretary to enter into the contract here claimed, necessarily there can be no duty on his part to put into the hands of the relator evidence of the contract having been entered into.

*Judgment affirmed.*