## ROBERTS

*v.*

## THE UNITED STATES, EX REL. VALENTINE.

BOARD OF AUDIT CERTIFICATES; MANDAMUS; COSTS.

1. The act of Congress of August 13, 1894, directing the treasurer of the United States to pay to the owners, holders or assignees of all board of audit certificates redeemed by him under the act approved June 16, 1880, the residue of 2.35 per centum per annum of unpaid legal rates of interest due upon said certificates from their date up to the date of approval of said act providing for their redemption, applies not only to certificates redeemed by him in 3.65 bonds of this District, but also in cases where the owners of such certificates were paid the amount of their claims in cash from the proceeds of the sale of 3.65 bonds by the treasurer under the act of March 3, 1881, authorizing him to sell the bonds and pay the certificates, when it should be for the interest of the District to do so.

2. And where the assignees of the owner of such certificates obtained judgment thereon in the Court of Claims, the treasurer having refused to redeem or pay them because of a previous controversy with the District authorities, and their judgment is then paid with interest at 3.65 per annum, their assignee is entitled to the additional 2.35 per centum per annum provided for by the act of August 13, 1894, although claiming under an assignment made after the payment of the judgment.

3. The payment of such additional interest by the treasurer of the United States, under such circumstances, is a purely ministerial duty, which may be enforced by writ of *mandamus*.

4. But the writ of *mandamus* will not be executed, in such a case, until the certificates are delivered to the treasurer for his protection as a public officer, if they were not filed in the Court of Claims in obtaining judgment on them.

5. In *mandamus* proceedings against the treasurer of the United States in his official capacity, the fact of his being a public officer will not preclude costs being awarded against him personally, if he is the unsuccessful party.

No. 792. Submitted May 5, 1898. Decided May 17, 1898.

HEARING on an appeal by the respondent from a judg-

ment ordering a writ of *mandamus* to issue against the treasurer of the United States.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment ordering a writ of *mandamus* to issue to the appellant, Ellis H. Roberts, as Treasurer of the United States and *ex officio* Commissioner of the Sinking Fund of the District of Columbia.

The facts, about which there is no controversy, are substantially these:

Charles E. Evans was a contractor for paving, etc., in the District of Columbia, and had an unsettled claim therefor at the time of the passage of the act of Congress providing for the ascertainment of the indebtedness of said District through a board of audit, June 20, 1874.

This board was authorized to issue certificates for amounts found to be due, and these were to be redeemed with bonds of the District, provided for therein, bearing interest at the rate of 3.65 per cent.

On August 1, 1874, two certificates were issued on behalf of Evans's claims; one for $19,616.25 and one for $909.40.

These certificates were withheld from Evans and deposited with the treasurer, as sinking fund commissioner, who held them subject to the order of the District Commissioners, because the latter had in the meantime made a claim against Evans for repairs necessary on the work that had been done by him.  The controversy remained unsettled until March 13, 1876, when Congress abolished the board of audit and prohibited the further issue of the 3.65 bonds.  On June 16, 1880, another act was passed authorizing the redemption of outstanding certificates of the board of audit by the issue of said bonds, and authorizing suits in the Court of Claims upon certain contested claims.  Judgments that might be rendered in the Court of Claims were to be discharged in the same manner.  As the 3.65 bonds began to sell at a premium, Congress, by act of March 3, 1881, authorized the

treasurer to sell the bonds and pay the certificates and judgments from the proceeds, when it should be for the interest of the District. The act of July 4, 1884, provided that no certificate should be paid unless presented for payment within one year from the date of the act.

Prior to January, 1881, the two certificates were assigned by Evans to Thomas J. Fisher. Demand was made upon the treasurer for their redemption under the act of 1880 and was refused. Said Fisher then instituted suit against the District in the Court of Claims, as authorized by the said act, upon both certificates and sundry other claims and demands. Fisher dying, the suit was regularly prosecuted in the name of his executors.

A compromise seems to have been made with the District Commissioners, and upon the advice of the Department of Justice the certificates were, on June 9, 1890, delivered to the attorney for the executors. They were at once presented to the treasurer with request to redeem them in the 3.65 bonds. He refused payment either in bonds or money unless a judgment should be had in the Court of Claims in the said suit for his protection. Thereupon, in order to obtain said judgment, the plaintiff amended his pleadings, striking therefrom all demands save said two certificates, and the court entered judgment thereon June 12, 1890. The treasurer then paid the judgments in money with interest at 3.65 per annum. About this time the executors of Fisher assigned to one Marcus W. Robinson all claims of every nature which they had under the assignment of Evans to Fisher, and Robinson, in turn, assigned to the petitioner, Marie A. Valentine.

On the 13th day of August, 1894, an act of Congress was duly passed, providing as follows:

"That the treasurer of the United States is hereby directed to pay to the owners, holders, or assignees of all board of audit certificates redeemed by him under the act approved June sixteenth, eighteen hundred and eighty, the

residue of two and thirty-five hundredths per centum per annum of unpaid legal rates of interest due upon said certificates from their date up to the date of approval of said act providing for their redemption." (28 Stat. 271).

The said Marie A. Valentine, as assignee of the said certificates, made demand of the treasurer for the payment of the additional interest in said act provided. This was refused in a written communication, dated November 3, 1897, giving the following reasons:

" You will note that the act referred to provides for additional interest to be paid only upon board of audit certificates redeemed by the treasurer under the act of June 16, 1880. Neither of the certificates recited in your petition was redeemed by the treasurer, and they are not in his possession.

" You state that certain judgments of the Court of Claims were issued in lieu of these certificates. These judgments were paid by this office in the manner prescribed by law, but neither of them states that they were issued in lieu of or upon debts of the District of Columbia represented by board of audit certificates.

" The treasurer has therefore no authority to pay the additional interest you demand."

Petition for *mandamus* was then filed, setting out substantially the facts above stated.

The defendant made the following return to the rule to show cause:

" Comes now the defendant, and for cause why the writ of *mandamus* should not issue as in and by the petition in the above-entitled cause prayed shows that the certain board of audit certificates socalled, in the said petition mentioned, namely, the certificates numbered 8879 and 19429, were not redeemed by him or any person holding the office of treasurer of the United States at any time, and that the only moneys paid by any treasurer of the United States on account of any of the matters or things in the said petition

mentioned as having relation to the said certificates or either of them were paid upon certain judgments of the Court of Claims of the United States, as appears by the transcript from the records of the Treasury Department of the United States hereto annexed and made part hereof, and that the defendant has no official knowledge, nor has he any official record in his office, showing or tending to show upon what claim or claims either of the said judgments were based."

The return was held insufficient, and, no leave having been asked to amend, judgment was entered granting the writ of *mandamus* as prayed.

*Mr. Henry E. Davis*, U. S. Attorney for the District of Columbia, and *Mr. D. W. Baker*, Assistant Attorney, for the appellant.

*Mr. B. E. Valentine* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It is clear that if the relator has any right at all under the act of August 13, 1894, she has pursued the only remedy open to her, and the question to be determined is, whether, under the facts stated, that remedy is available.

The first assignment of error, to the effect that the court erred in holding that the relator is an assignee of the certificates, can not be sustained. Treating the demurrer to the return as reaching back to and raising the question of the sufficiency of the allegations of the petition, we find nothing wanting therein in respect of relator's right as assignee of Evans through a successive chain of formal transfers. It is true that the assigment to relator bears date after the payment of the judgments of the Court of Claims to the executors of Thomas J. Fisher, to whom Evans had assigned the certificates some time after the passage of the redemption act of June 16, 1880; but this seems to us wholly immaterial. We find nothing in the language of the act of

August 13, 1894, to justify the contention of the appellant, that the assignees therein " mean assignees at the time of the redemption, and not any person who might acquire a general assignment of claims afterwards." On the other hand, it seems, without doubt, to extend its relief to all owners, holders, or assignees of the certificates that had been redeemed under the act of June 16, 1880, without limitation in respect of the time of the accrual of their respective rights and interests.

Being responsible in case of payment to an unauthorized claimant, the defendant had the right to demand satisfactory proof of the genuineness and regularity of the several assignments under which the relator claimed ; and had his denial of payment been founded on the insufficiency thereof, after due inquiry, the writ of *mandamas* would not lie. Had that objection been set up, the relator might have satisfied it by supplementary proofs, or else by proceedings at law for the establishment of her claim as against Evans and intermediate assignees; but it was not raised, either directly or by implication, in the written statement of the grounds upon which the payment was refused.

Nor does the return of the defendant, made to the rule to show cause, deny the genuineness or regularity of the relator's claim as assignee; hence it must be regarded as admitted.

2. The second contention, namely, " that the certificates set out in the petition were never redeemed by the treasurer of the United States, and therefore are not certificates within the meaning of the act " (August 13, 1894), is far-fetched and equally untenable with the first one.

The act is general and remedial, and its language affords no ground for saying that the certificates therein referred to as " redeemed" by the treasurer mean such only as had been redeemed in 3.65 bonds under the provisions of the act of June 16, 1880.

We think it apparent that the word " redeemed," as ap-

plied to said certificates, includes in its meaning not only
their redemption in the 3.65 bonds at par as provided in the
act of June 16, 1880, but also their payment in cash from
the proceeds of such bonds when sold for the purpose by the
treasurer under the supplemental act of March 3, 1881.
This act was passed for the benefit of the District, because in
the meantime the 3.65 bonds had risen above par in the
market. It was to that extent and for that purpose amend-
atory of the former act and must be considered with it.
Any other view would be most unjust as well as unreason-
able.

The single purpose of the act of August 13, 1894, was to
compensate holders of valid claims, whose payment had
been so long delayed, by giving them additional interest, to
make up the full legal rate of 6 per cent. for the six years
between August 16, 1874—when payment had been sus-
pended—and June 16, 1880, when redemption or payment
of the principal with 3.65 per cent. interest was provided
for. Moreover, the equities of those who had been paid in
cash were even greater than those of certificate holders who
had been paid in the bonds, because these latter had re-
ceived the additional benefit of the immediate advance in
the value of those bonds. Furthermore, those redemption
acts remained in force, limited in their operation only by
the act of July 5, 1884, providing that no certificate should
be thereafter paid unless presented within one year from
this last date.

As a matter of fact, the return made by the defendant in
answer to the rule does not set up any such construction of
the act of 1894. The sole ground of refusal to pay the de-
mand of relator, as therein stated, is "that these Evans' cer-
tificates" were not redeemed by him or any person holding
the office of treasurer of the United States, and that the
only moneys paid by any treasurer, on account of any of
the matters or things in the said petition mentioned as hav-
ing relation to the said certificates, or either of them, were

paid upon certain judgments of the Court of Claims of the United States as appears by the transcript from the records of the Treasury Department of the United States hereto annexed, and that the defendant has no official knowledge, nor has he any official record in his office showing or tending to show upon what claim or claims said judgments were based.

The undenied allegations of the petition show that the certificates had at last been surrendered, to wit, June 9, 1890, upon some agreement of compromise with the District without a judgment. They were immediately presented to the then treasurer, who refused payment. Knowing that the suit was pending upon them in the Court of Claims, he required that they should be reduced to judgments.

When so reduced to judgments and certified to him from the records of that court, be paid the full amounts respectively adjudged, with 3.65 per cent. interest. The certificates became merged in the judgments and were presumably filed with and made a part of the record in the Court of Claims. Hence they could not be paid or redeemed as such; but the payment of the judgments was the complete discharge of their obligation. They were thereby paid, and as completely "redeemed," in the sense of that word as used in the act of August 13, 1894, as if they had been actually redeemed in bonds under the act of June 16, 1880, without judgment or the necessity of suit.

There is no room for doubt that these judgments were rendered upon the certificates described in the petition, and the defendant does not deny the fact. He simply says that he has no official knowledge and no official record tending to show that such is the fact. The fact is a matter of record in the Court of Claims, and he can readily procure a transcript thereof for his own official files if it be of any real importance. The foregoing being the only defense made in the return, the court did not err in holding it insufficient.

3. The principles which govern the action of the courts

in the exercise of jurisdiction over the executive departments of the Government have long since been firmly established. *Kendall* v. *Stokes,* 12 Pet. 524; *Decatur* v. *Paulding,* 14 Pet. 497; *U. S. ex rel. Dunlap,* v. *Black,* 128 U. S. 40; *Noble* v. *Union River Logging R.R. Co.,* 147 U. S. 165; *Seymour* v. *South Carolina,* 2 App. D. C. 240, 246; *Int. Con. Co.* v. *Lamont,* 2 App. D. C. 532, 546; S. C. 155 U. S. 303, 308; *Lochren* v. *Long,* 6 App. D. C. 486, 504.

The duty which is sought to be enforced by *mandamus* must be purely ministerial and existent at the time. The duty of the officer must be plainly defined and one that he is required by the law to perform. In our opinion these requirements are completely satisfied by the conditions of this case. The statute conferring the right and imposing the duty is so plain in its terms as to admit of no room for construction.

The situation is quite different from that, in *Decatur* v. *Paulding,* or in *United States, ex rel. Dunlap,* v. *Black, supra,* wherein the duty of construing different laws and determining by which one the rights of the relators were to be governed was necessarily involved. Moreover, as we have seen, the defendant did not, in fact, found his refusal to perform upon any such supposed duty of construction of the statute.

4. The further point has been made that the record does not show in whose possession the two certificates were when the suit was filed. Presumably they are on file in the Court of Claims in the records of the suits therein; but at the same time some doubt as to this is raised by certain recitals of the petition. Whilst they are of a nature, especially since their merger in the judgments, that renders their possession of comparative unimportance; yet the defendant, as a public officer, is entitled to as complete protection from all danger of further litigation as can be afforded by the judgment of the court. Consequently, if these certificates were not surrendered in procuring the judgments upon them, it is but just that the judgment in this case should be so

amended as to require their surrender to the defendant as a condition precedent to the execution of the writ.

The judgment will be affirmed with costs, and the cause will be remanded with leave to amend that judgment if need be in accordance with the foregoing suggestion.

It has been suggested that this cause be treated as one to which the United States are parties, because of the official character of the defendant, and that, as a consequence, no costs should be awarded.

It is to be regretted that no action has ever been taken by Congress to meet the exigencies of such cases as this, both in respect of exempting public officers from liability for costs, and providing for the substitution of their successors, as parties, in case of death, resignation, or removal.

The courts have no discretion in the premises. In the absence of legislation making another rule, they must treat the action as personal, the writ as directed to the person temporarily occupying the office and not to the office itself. It is for this reason that the Supreme Court has invariably refused to permit the defendant's successor in office to become a party to the cause in his stead. *United States, ex rel. Bernardin,* v. *Butterworth,* 169 U. S. 600. In that case the subject is carefully reconsidered and the doctrine reaffirmed by the majority of the court after a review of former decisions.

Mr. Justice Shiras, who delivered the opinion of the majority, adopted a part of the opinion in *United States* v. *Boutwell,* 17 Wall. 604, from which we quote the following extracts as governing the question of costs here presented: "It is the personal default of the defendant that warrants impetration of the writ, and if a peremptory *mandamus* be awarded the costs must fall upon the defendant. . . . If a successor in office may be substituted, he may be mulcted in costs for the default of his predecessor, without any delinquency of his own." *Affirmed.*