## UNITED STATES ex rel. SIMONS v. HINES, Adm'r of Veterans' Affairs.

### No. 5964.

Court of Appeals of the District of Columbia. Decided Jan. 29, 1934.

G. Frank Langford, of Washington, D. C., for appellant.

Leo A. Rover, John J. Wilson, and B. L. Guffy, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The petitioner below, who is appellant here, appeals from a judgment of the Supreme Court of the District of Columbia in favor of the Administrator of Veterans' Affairs.

This judgment was entered upon the petitioner's demurrer to the Administrator's answer to an application for a writ of mandamus, and the petitioner electing to stand on his demurrer, the appeal comes here.

The petitioner served in the United States Navy during the World War; duly received an adjusted-service certificate; and thereafter borrowed the entire loan value thereof from the Veterans' Bureau.

The greater part of that loan was made to him personally upon his own application at a time when he had been adjudicated incompetent, and had a duly qualified guardian, of whose appointment the Veterans' Bureau had notice.

But prior to the filing of the petition in this case, he had been relieved from further legal disability by a proper decree.

He thereupon applied to the respondent for a loan equal in amount to that made him while non compos.

This application being denied, he set up the foregoing facts in a petition for mandamus to compel the respondent to lend him for the second time the loan value of his certificate.

The respondent answered that under the law and applicable statutes he was not compellable to lend the petitioner further moneys.

The Adjusted Compensation Act of 1924 provided for the issuance to veterans of the World War of certificates entitling them to additional compensation at a future time.

And it authorized, but did not undertake to require, the banks of the nation, under certain conditions, to make loans to veterans on their notes secured by their certificates. 43 Stat. 121–126 (38 USCA § 591 et seq.).

If such notes were not paid at maturity, it was further provided that the Director of the Veterans' Bureau, predecessor of respondent in office and title, might in his discretion pay off the loaning bank and hold the certificate until redeemed or payable, and then deduct therefrom the amount previously paid, with interest. 43 Stat. 126, § 502 (c), 38 USCA § 642 (c); 46 Stat. 1016.

Several years later the loan section (502) was amended (subdivision i) to provide that: "The Director of the United States Veterans' Bureau is authorized * * * to make loans to veterans upon their adjusted service certificates in the same amounts and upon the same terms and conditions as are applicable in the case of loans made under this section by a bank, and the provisions of this section shall be applicable to such loans * * *." Act March 3, 1927, c. 359, par. 1, 44 Stat. 1389 (38 USCA § 642 (i).

The later amendment of February 27, 1931 (46 Stat. 1429, 38 USCA § 642 (l), provided that the loan value should not be less than 50 per cent. of the face value of the certificate, but made no other change in the act of interest to this case.

The respondent's first line of defense is section 310 of the amendment of July 3, 1926 (44 Stat. 828, § 4 (b), 38 USCA § 620), providing that: "The decisions of the Secretary of War, the Secretary of the Navy, and the director, on all matters within their respective jurisdictions under the provisions of this chapter * * * shall be final and conclusive."

As interpreting that provision of the statute, the respondent cites U. S. v. Williams, 278 U. S. 255, 49 S. Ct. 97, 98, 73 L. Ed. 314.

While that case sought final payment of a certificate and not a loan thereon, the Supreme Court there said:

"Under the provisions of the act, and in the light of the section just quoted, we are of opinion that exclusive authority is vested in the Director of the Bureau to entertain and pass upon all claims for payment of these certificates.

"It is evident that, when a certificate is presented to the Director by one claiming to be the beneficiary, that officer must, as a necessary prerequisite to the payment, ascertain and determine that the veteran is dead, that the person claiming payment is in fact the beneficiary, and any other matter of fact or law which may affect the right of the claimant in any given case.

"We may assume that the Director performed that duty here.

"The record does not disclose the basis for his action; but, whatever it may have been, his decision is final, at least unless it be wholly without evidential support or wholly dependent upon a question of law or clearly arbitrary or capricious. Silberschein v. U. S., 266 U. S. 221, 225, 45 S. Ct. 69, 69 L. Ed. 256."

Without deciding what justification this decision, and section 310 of the statute as amended, furnish the Administrator for the making of the first loan, consideration of those statements together with the loan section of the statute, and the law and practice governing the writ of mandamus, convinces us that the petitioner is not entitled to that writ to require the making of a second loan.

For the loan section does not direct, but merely authorizes, the Administrator to make loans in cases where prior to the amendment the banks were authorized to make loans, and it is scarcely conceivable that the loosest of our loose banks would make such a duplicate loan.

And the writ of mandamus is always an extraordinary remedy, resting in the grace and discretion of the court, when the act demanded to be done is ministerial by nature, and the obligation to do it is clear, peremptory, and indisputable.

Before the writ may issue the law must not only authorize, but require, the act to be done as demanded.

We are, of course, not called upon to consider the possibility of another conclusion in some other proceeding based upon the same certificate, but are of opinion that the petitioner makes out no sufficient case here for a mandamus requiring the respondent to make him a further loan, and the judgment denying it is therefore affirmed. United States ex rel. International Contracting Co. v. Lamont, 155 U. S. 308, 15 S. Ct. 97, 39 L. Ed. 160; In re Skinner & Eddy Corp., 265 U. S. 93, 44 S. Ct. 446, 68 L. Ed. 912; Interstate Commerce Commission v. U. S. et al., 260 U. S. 32, 43 S. Ct. 6, 67 L. Ed. 112; U. S. ex rel. Barton v. Wilbur, 283 U. S. 414, 51 S. Ct. 502, 75 L. Ed. 1148.

**DARKS v. ICKES, Secretary of the Interior.**

No. 6053.

Court of Appeals of the District of Columbia.

Argued Jan. 8, 1934.

Decided Feb. 5, 1934.

E. J. Van Court, of Eufaula, Okl., and Paul M. Niebell, of Washington, D. C., for appellant.

Nathan R. Margold, Charles Fahy, J. Kennard Cheadle, and Frederic L. Kirgis, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

PER CURIAM.

This appeal is from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of mandamus to compel the Secretary of the Interior to pay over certain funds in his possession, accumulated from oil leases on the restricted land of Thomas Long, a full-blood Creek Indian.

Long died in 1932, leaving a will in which his estate was devised to his wife and children, full-blood Indians of the Creek Tribe, one of the Five Civilized Tribes, in Oklahoma. The Secretary contests the right of the administrator of Long to these funds on the ground that they are properly held by him as restricted under the Act of January 27, 1933, 47 Stat. 777.

Under the Act of April 26, 1906, 34 Stat. 137, the will operated to remove the restrictions at the time of Long's death, when the title to his property passed to the devisees under the will. These devisees, however, were Indians of full blood of the Creek Tribe; and, as wards of the government, the funds, so long as they remained in the possession of the Secretary of the Interior, were subject to such disposition as Congress might see fit to make. In this situation they became restricted under the 1933 act, preserving the jurisdiction of the Secretary of the Interior over the funds. The 1933 act did not operate to repeal the 1906 act, but merely to modify its provisions in regard to the removal of the restrictions of property passing by will. Under the 1906 act, an Indian may still make a valid will, and his property will pass to the legal devisees as therein provided, and, but for the 1933 act, the devisees would take the property in full right clear of restrictions. Blundell v. Wallace, 267 U. S. 373, 45 S. Ct. 247, 69 L. Ed. 664. But the 1933 act has placed a restriction upon all property of this class. This Congress had the power to do in the exercise of guardianship over the Indians of the class embraced within the terms of the act.

The court below was right in denying the writ on the authority of King v. Ickes, 62 App. D. C. 83, 64 F.(2d) 979; and Ickes v. Perry, 62 App. D. C. 86, 64 F.(2d) 982, which are controlling in this case.

The judgment is affirmed.

## WILLIAMS v. RUBENSTEIN.

### No. 5992.

Court of Appeals of the District of Columbia.

Argued Jan. 15, 1934.

Decided Feb. 5, 1934.

Thomas A. Williams, of Richmond, Va., and Albert D. Esher, of Washington, D. C., for appellant.

Henry I. Quinn and Harry F. Kennedy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

PER CURIAM.

This is the second appeal in this case.

The action arose out of an automobile accident in Virginia and is based on the rule of law called the "family purpose doctrine" as established by the courts of that state.

On the former appeal [61 App. D. C. 266, 61 F.(2d) 575], we reversed a judgment for the plaintiff on the ground that the evidence failed to show that the automobile being driven at the time by the wife of defendant was

bought and maintained for family purposes. On the retrial the lower court instructed a verdict for the defendant. The appeal is from the judgment entered on the directed verdict.

· We have examined the record with care to see if there was introduced any substantial evidence as the result of which the jury might have found for the plaintiff, and we can discover none. The principal reliance of the appellant here is upon the claim that on the former trial appellee's wife testified the automobile was bought by her husband for family use; but even if it be conceded she had so testified formerly, it would not sustain a verdict on a subsequent trial where not only no such evidence was given but the fact denied. Here we have an action in which a defendant is charged with liability on the theory that having maintained an automobile for the use of his family, the negligence of the driver, his wife, is imputable to him. To maintain such an action, proof of the main fact is a first and indispensable requirement.

Here, as we have seen, the plaintiff wholly failed to maintain that issue. This makes it necessary to affirm the action of the trial court.

But in addition to this, we think it proper to call attention to the fact that on the previous appeal we were led to say that while in Virginia there is no statute declaring that negligence on the part of the driver of an automobile, a member of the family, should be imputed to the owner where the car was bought and maintained for family purposes, we should nevertheless hold that rule applicable if it should be clearly shown to be established by the decisions of the highest court of that state. On further consideration, we are inclined, at least for the present, to leave that question open, and therefore to say we shall not feel bound by what was said on that subject on the first appeal in this case. 61 App. D. C. 266, 61 F.(2d) 575.

Affirmed.

No. 5993 and No. 5994 affirmed on the grounds set out in No. 5992.

MITCHELL, Insurance Com'r of California,
v. MAURER et al.
No. 7262.

Circuit Court of Appeals, Ninth Circuit.
Feb. 26, 1934.

See, also, 67 F.(2d) 286.

Frank L. Guerena, of San Francisco, Cal., for appellant.

E. D. Lyman, P. B. Plumb, C. L. Mc-Gaughey, and Ben S. Beery, all of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Since the precise sequence of events is of crucial importance in determining the question presented by this appeal, involving as it does priority of jurisdiction as between a federal and a state court, we will give a chronological statement of the facts.

1. The appellee corporation was organized under the laws of Delaware. Prior to April 19, 1933, it was authorized to transact, and was engaged in, the business of insurance in California under a certificate of authority issued by the appellant.

2. On March 23, 1933, in the Court of Chancery for New Castle county, Del., the appellee Maurer filed a bill for the appointment of a receiver for the appellee corporation. The complaint recited that the appellee Maurer had recovered a judgment against Fred Sanderoff in a New Jersey court for $20,000; that of this amount $5,000 was covered by a casualty insurance policy in favor of Sanderoff issued by the Commonwealth Casualty Company, of Pennsylvania, which, it was alleged, was a predecessor in interest of the appellee corporation; that, by reason of an alleged merger with the Commonwealth Company, the appellee corporation is indebted to the appellee Maurer in the sum of $5,-000; and that the appellee corporation was insolvent.

3. On March 30, 1933, the appellant suspended the right of the appellee corporation to transact the business of workmen's compensation insurance in California. That suspension was in effect on April 19, 1933.

4. On April 19, 1933, at an undisclosed hour, on motion of the solicitor for the complainant-appellee Maurer for a decree pro confesso, the Chancellor of the Delaware court appointed three receivers for the appellee corporation, as set forth more fully infra.

5. On April 19, 1933, at 4:45 p. m., a bill of complaint, apparently verified on April 18, 1933, was filed in the court below, the pleading being entitled a "Petition for Appointment of Ancillary Receiver," and bearing the caption of "Bertha E. Maurer v. International Re-Insurance Corporation," etc. The preamble of the pleading, however, recited that it was "the petition of Arthur G. Logan, Carl M. Hansen and George de Bienzille (sic) Keim," who, the petition alleged and the record so shows, were appointed receivers for the appellee corporation by the Delaware court.

6. On April 19, 1933, at 4:54 p. m., in the superior court for the county of Los Angeles, Cal., the appellant filed a petition praying, inter alia, that he be placed into possession of the property and business of the appellee corporation. That court will hereinafter be referred to as "the state court."

7. On April 19, 1933, at an undisclosed hour, the court below signed an order appointing Keim and W. H. Comstock ancillary receivers of the appellee corporation, and enjoining any one else from interfering with its property.

8. On April 19, 1933, at an undisclosed hour, the state court issued a temporary restraining order against the appellee corporation enjoining it from disposing of its property or transacting business in California, and ordering the appellant "into the actual possession of said property."

9. On April 20, 1933, at 9:30 a. m., the temporary restraining order of April 19, 1933, supra, an order against the appellee corporation to show cause, and a copy of the petition, filed in the state court, were served on Emil Johnson, as vice president of the appellee corporation. The order to show cause was returnable on April 28, 1933.

10. On April 20, 1933, at an hour subsequent to 9:30 a. m., and variously indicated as having been prior to 12:20 p. m. or prior to 2 p. m., or shortly afterward, Comstock served on Johnson a copy of the order of the court below appointing the ancillary receivers, and told Johnson that "until further orders" the latter "was to regard himself as an agent and employee of said ancillary receivers."

11. On April 20, 1933, at an hour variously indicated as having been 12:20 p. m. or about 2 p. m., as already stated, Johnson exhibited to two deputies of the appellant the order appointing ancillary receivers.

12. On April 20, 1933, at a time variously stated in the record to have been in the morning or at 2 in the afternoon, two deputies of the appellant served Johnson with an "Order to Seize and Take Possession," signed, not by the state court of California, but by the appellant himself, through a deputy.

13. On April 20, 1933, at 1:50 p. m., the order of the court below appointing ancillary receivers and restraining all other persons from interfering with the property of the appellee corporation was filed in the court below.

14. On April 21, 1933, in the afternoon, a certified copy of the order of the court below appointing ancillary receivers was served upon the appellant, through two deputies. A copy of the restraining order by the court below was also served on the appellant, on the same afternoon.

15. On April 25, 1933, various amendments to the bill of complaint were filed in the court below, together with a new "petition for the appointment of ancillary receiver, including the amendments, and together with an exemplified copy of the bill of complaint filed in the Delaware court, and other papers.

16. On April 25, 1933, the appellee corporation filed its answer to the bill of complaint in the court below, admitting all the allegations of the bill, and consenting to the appointment of an ancillary receiver or receivers.

17. On a date undisclosed by the record, the state court in California continued the hearing on the order to show cause from April 28, 1933, to May 10, 1933, in view of the pendency of the proceedings in the court below.

18. On May 2, 1933, the appellant served upon the appellee corporation, and filed in the court below, a "motion to vacate the order appointing receivers," etc., "to dismiss the petition for the appointment of receivers, and to re-examine the ex parte order appointing the receivers."

19. On May 12, 1933, the court below denied the appellant's motion to vacate the order.

20. On June 13, 1933, a motion to rehear the appellant's motion to vacate the order appointing receivers, etc., which motion to rehear was filed by the appellant on May 26, 1933, was denied by the court below.

21. From the orders of the court below of May 12, 1933, and of June 13, 1933, supra, the present appeal was taken.

There are several preliminary questions to be disposed of before we address ourselves to the main issue.

In the first place, the status of the appellant as a party herein has been seriously brought into question. In the captions of the transcript of record, of the supplemental transcript of record, and of the various briefs, the appellant is designated as "intervenor." In the appellant's petition for appeal, in his assignments of error, in his cost bond, in the stipulation re supplemental transcript of record on appeal, and, finally, in the specifications of error in his own brief, the appellant is repeatedly referred to as "intervenor." He is therefore clearly in error when he states, in his supplemental brief, that "the only reference in the record to appellant as 'intervenor' is on Page 71, where counsel for the State Insurance Commissioner signed the petition for appeal as 'attorneys for intervenor,' and in the cost bond (Tr. p. 75), * * *" and that "The assignments of error (Tr. p. 72) * * * properly refer to the Commissioner as the 'appellant.'"

In view of these frequent references by the appellant to himself as "intervenor," we regard as quite pardonable the error of the appellees in accepting the appellant's own designation of himself, and devoting the first thirteen pages of their brief to the proposition that "the right of intervention must be in subordination to and in recognition of the main proceeding."

Nevertheless, a careful study of the record and of the law applicable thereto convinces us that the appellant has brought himself into court—not, indeed, as intervener, but by his motion to vacate the order of the court below appointing the ancillary receivers, as set forth above. The order of the lower court contained an injunction in the following language, the italics being our own: "It is further ordered, adjudged and decreed that the said respondent and each and every of its agents and employees, and all the creditors of the respondent and all * * * *commissioners and all deputies* * * * and generally *all persons* * * * *whatsoever* are hereby enjoined from removing, transferring, disposing," etc.

We believe that the language of the above injunction was sufficient to bring the appellant into court and to authorize his filing of the motion to vacate. It will be remembered that a certified copy of the restraining order of the court below was served upon the appellant, on the day after the order was filed.

In Mitchell v. Lay, 48 F.(2d) 79, 84, 85, this court said: "At this juncture we pause to consider appellee's motion to dismiss so far as the motion is based upon the claim that the appellant is not entitled to appeal from the order granting the injunction or from the order refusing to vacate the receivership on the ground that the appellant is not a party to the action, and that the appellant did not ask permission to intervene in the action, that therefore he is a stranger to the action and not entitled to the appeal from the orders made. It is true that the appellant is not a party to the original action, but when he was brought into court by the process of the court at the instigation of the parties to the action or of the receiver he became a party to the ancillary proceedings and entitled to appeal from the judgment rendered against him. The judgment therein rendered was as to him final and appealable as such." Cases cited, including O'Neil v. Welch (C. C. A.) 245 F. 261, and Ward v. Foulkrod (C. C. A.) 264 F. 627, infra.

Certiorari was denied in Lay v. Mitchell, 283 U. S. 864, 51 S. Ct. 656, 75 L. Ed. 1469, and the case was cited with approval, on the very point discussed in the foregoing excerpt, in Johnson v. Manhattan Ry. Co., 289 U. S. 479, 495, 53 S. Ct. 721, 77 L. Ed. 1331.

Having determined that the appellant is in court, we next turn our attention to the question of whether or not, regardless of priority of jurisdiction as against the state court, the court below had *any* jurisdiction at all to appoint ancillary receivers.

In the first place, the general rule in the federal courts is that a receiver in equity has no right to sue in courts of a foreign jurisdiction. Booth v. Clark, 17 How. (58 U. S.) 338, 348-356, 15 L. Ed. 164.

But the rule is subject to the limitation that the objection applies when the attempted suit of the receiver is for the purpose of taking property out of the jurisdiction. This limitation was recognized by Mr. Justice Wayne in the leading case of Booth v. Clark, supra, who said, at page 352 of 17 How.: "Our industry has been tasked unsuccessfully to find a case in which a receiver has been permitted to sue in a foreign jurisdiction for the property of the debtor."

Again, the following passage on page 356 of 17 How., makes it clear what suits the learned justice had in mind: "If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such

court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official accountability."

A similar limitation of the rule is evidence in another leading case on the subject, Great Western Mining Co. v. Harris, 198 U. S. 561–576, 25 S. Ct. 770, 774, 49 L. Ed. 1163: "The ground of this conclusion is that every jurisdiction, in which it is sought, by means of a receiver, to subject property to the control of the court, has the right and power to determine for itself who the receiver shall be, and to make such distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein, and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court, or its approval as to the officer who shall act in the holding and distribution of the property recovered."

Again, this limitation was recognized by the Supreme Court in Sterrett v. Second National Bank, 248 U. S. 73, 76, 77, 39 S. Ct. 27, 28, 63 L. Ed. 135, where it said: "Since the decision of this court in Booth v. Clark, 17 How. 322, 15 L. Ed. 164, it is the settled doctrine in federal jurisprudence that a chancery receiver has no authority to sue in the courts of a foreign jurisdiction to recover demands or property therein situated. The functions and authority of such receiver are confined to the jurisdiction in which he was appointed. The reasons for this rule were fully discussed in Booth v. Clark, and have been reiterated in later decisions of this court. Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Great Western Mining Co. v. Harris, 198 U. S. 561, 575, 577, 25 S. Ct. 770, 49 L. Ed. 1163; Keatley v. Furey, 226 U. S. 399, 403, 33 S. Ct. 121, 57 L. Ed. 273. This practice has become general in the courts of the United States, and is a system well understood and followed. It permits an application for an ancillary receivership in a foreign jurisdiction where the local assets may be recovered and, if necessary, administered."

Indeed, specific recognition of the right of the primary receiver to ask for the appointment of an ancillary receiver in a foreign jurisdiction is contained in the case of Ward v. Foulkrod (C. C. A. 3) 264 F. 627, which is discussed at greater length infra. At page 636 of the opinion in 264 F., we find the statement that the Chancellor of a Delaware court authorized its receivers "to take such proceedings as may be necessary in the courts of any other state or of the United States *to secure the aid of such courts by the appointment of ancillary receivers, or otherwise, in taking possession and charge of the property and assets of the said Badenhausen Company.*" Similar deference to the rights and powers of courts of foreign jurisdiction was exhibited in the same Chancellor's amended decree. Similar language was employed by the Delaware Chancellor in the case at bar.

Of such a situation, the court, in Ward v. Foulkrod, supra, said, at pages 636, 637 of 264 F.:

"These parts of the Chancellor's decree are in complete harmony with the general rule that a receiver, appointed by a court of chancery, has no legal status outside the territorial jurisdiction of the court appointing him. The court has no power beyond the bounds of its jurisdiction, and can confer none upon its receiver. He receives his powers from the court and can only exercise them within its jurisdiction. * * *

"What then is to be done? * * *

"The appropriate proceeding in such a case as this (which is readily distinguishable from O'Neil v. Welch, supra [(C. C. A.) 245 F. 261], and similar cases where the foreign court had no rights to be preserved) is not by application of the receivers appointed by the court of primary jurisdiction addressed to the court of foreign jurisdiction that it summarily discharge its receiver and direct him to turn over to them the corporation's property in his hands, but is by application to that court praying it to discharge its receiver after he has passed his account and appoint ancillary receivers. When the prayer of such a petition has been granted and ancillary receivers have been appointed, all rights, those of the domiciliary court and of the foreign court, and of all stockholders and creditors of the corporation in both jurisdictions, will fall into their proper places and will be duly cared for and protected in the orderly administration of the estate. * * *

"In order, however, that there shall be no misunderstanding as to what we consider to be the rights of the receivers of the State court in future appropriate proceedings looking to the appointment of ancillary receivers in jurisdictions foreign to that of their appointment, we direct that the order appealed from be modified so as to provide that the dismissal of the petition shall be without prejudice to the right of the Delaware receivers to institute appropriate proceedings for the appointment of ancillary receivers for the

property of the corporation now in the hands of the receiver appointed by the District Court of the United States for the Eastern District of Pennsylvania."