## PIONEER BOX CO. *v.* PRICE VENEER & LUMBER CO.

[96 South. 103.   No. 23241.]

1. SALES. *Act of seller in filing orders and commencing preparations to fill held not an acceptance.*

   Where plaintiff's offer was to sell lumber subject to rules of association which required written contracts but, upon receipt of orders expressly requiring acknowledgment and statement of shipping dates, it did not communicate any acceptance to buyer, its acts in filing the orders and commencing the preparation of the stock thereby called for was not an acceptance.

2. CONTRACTS. *Acceptance must be evidenced by communicated conduct or acts.*

   Acceptance of an offer must be evidenced by some conduct or acts actually communicated to offerer.

3. SALES. *Cancellation of unacknowledged orders held to terminate contractual obligations and acceptance of part of goods thereafter not to require acceptance of others.*

   Where orders were not acknowledged by seller as required therein. and by rules of association subject to which they were given, and thereafter the buyer countermanded the orders, there was then no contractual obligation to accept any shipment, and the buyer, by accepting two cars, with distinct understanding that cancellation was not otherwise waived, did not become obligated to receive further shipments.

APPEAL from circuit court of Marion county. .

HON. A. E. WEATHERSBY, Judge.

Suit by the Price Veneer & Lumber Company against the Pioneer Box Company. From a judgment.for plaintiff, defendant appeals. Reversed, and judgment entered for defendant.

*Mounger, Ford & Mounger* and *Green & Green,* for appellant.

Propositions and counter-propositions do not make a contract; before either party is bound, the proposition of

one of them must be accepted by the other exactly as proposed; there must be a meeting of the minds on the same things. *New York Life Insurance Co.* v. *McIntosh,* 86 Miss. 236, 38 So. 775; *Gulf & Ship Island R. R. Co.* v. *U. S. Pike & Foundry Co.,* 112 Miss. 148; *Minneapolis, etc., R. R. Co.* v. *Columbus Rolling Mill Co.,* 119 U. S. 146, quoted in 86 Miss. 238, *supra*:

"An offer which calls for a reply 'by return mail' 'in course of post' . . . or the like, must be accepted by mailing an answer either by the next mail after it is received or during same day that the offer is received. When no time for acceptance is specified, a reasonable time is implied." 13 C. J. 280.

" 'Acknowledge order promptly' means 'quickly; expeditiously.' Certain it is that the word—as used, means something more definite and covers a shorter time than a reasonable time." 32 Cyc. 636, and note 27.

The orders were dated September 13, 1920. No acceptance of the orders was made in writing at all, and none was indicated until October 23rd, and on October 19, 1920, appellant had cancelled the orders. Thus forty days had elapsed between the mailing of the orders to appellee and any indication that the orders had been received or accepted.

The breach of a contract by one party authorizes the other to abandon it. *Fore River Ship Building Company* v. *So. Pacific Co.,* 219 Fed. 387; *Oscar Barnett Foundry Co.* v. *Crow,* 219 Fed. 450; *Murray* v. *Barnhardt,* 42 So. 489, 13 C. J. 688; *Cleveland Rolling Mill Co.* v. *Rhodes,* 121 U. S. 255; *McIntyre* v. *Kline,* 30 Miss. 361.

The rule stated in 13 C. J. 655, is: "But after notice of such repudiation, the other party cannot go on and complete an executory contract and then sue for the full contract price or any increased damages caused by his continuing to perform." *Danforth* v. *Walker,* 37 Vt. 239, 244, holds: "While a contract is executory, a party has the power to stop performance on the other side by an explicit direction to that effect, by subjecting himself to

such damages as will compensate the other party for being stopped in the performance on his part at that point or stage in the execution of the contract. A party thus forbidden cannot afterwards go on and thereby increase the damages and then recover such increased damages of the other party. 35 Cyc., 186, 532.

The court erred in overruling defendant's objection to evidence of the shipment and payment for the two cars not sued for. We have recited, *supra,* the evidence touching these two cars, and they were permitted to be shipped by appellant, after the cancellation of the orders, upon appellee's assurance that the two cars were loaded, and upon appellee's wire of October 23rd, stating: "Your telegram received. One car your stock loaded and other car loading. Must ship these. Answer," and to which appellant replied: "You can ship the two cars of veneer."

This permission to ship the two cars was incompetent, and thus to affect the minds of the jury with the proposition that the orders exhibits "A" to "M" had been accepted, and that the minds had met and a contract made, and that the breach by appellee had been waived.

In addition to the authorities, *supra,* 35 Cyc., page 52, says: "An offer to buy or sell becomes a binding agreement when the person to whom the offer is made accepts it and communicates his acceptance, or performs an act in compliance with the terms of the offer from which his acceptance may be implied. . . . An acceptance may be revoked by a communication to that effect before the acceptance is communicated, but not after. An acceptance, to be effective, must be identical with the offer, and unconditional.

Page 55: "But until the goods are shipped or delivered, there is no acceptance unless acceptance be communicated." "A countermand of an order of goods received before shipment is effective, as no contract is made until the offer of purchase is accepted by shipment." *Maine* v. *Tracy,* 86 Ark. 27, 109 S. W. 1015. "The order is not accepted if the goods shipped do not conform to the order

in kind." *Cooper* v. *Altimus,* 62 Pa. St. 486. "Or in amount:
*Bruce* v. *Pearson,* 3 Johnson (N. Y.) 534."

"The buyer is entitled to refuse the whole of the goods
tendered if they exceed the amount ordered, and a vendor
has no right to insist on the purchaser accepting all, or
upon the buyer selecting out of a larger quantity deliv-
ered. *Strauss* v. *National Parlor Furniture Co.,* 76 Miss.
343; *Starling* v. *Caldwell,* 18 So. (Miss.) 376; 35 Cyc.,
202, 35 Cyc. 531-3, *supra.*

There is no evidence as to how this sale was made, or
when, or to show that it was properly made, and the bur-
den of proof was upon appellee to show these facts.

In such case it was necessary that the buyer, appellant,
should have notice of the sale. *Magnes* v. *Sioux City
Nursery Co.,* 14 Colo. App. 219, 59 Pac. 876; 35 Cyc., 522,
et seq. The extent of appellee's right was, as held in
*American Cotton Oil Co.* v. *Herring,* 84 Miss. 683.

The Court erred in refusing a peremptory instruction
for the appellant. To avoid iteration, we respectfully re-
fer to the points and the authorities hereinbefore recited,
to show that under no circumstances was appellee en-
titled to recover in this suit. Every question as to the
admissibility of evidence may be swept away and decided
adversely to our contention, yet there still remains the
question whether the plaintiff showed that there existed
a contract between him and the defendant. The case de-
veloped by the testimony did not make as strong a case
as to the existence of a contract as the case alleged in the
declaration.

Wherefore, the judgment should be reversed and the
motion to remove to the federal court sustained, or if not,
that judgment be rendered here for appellant.

*Rawls* and *Hathorn* and *Hall & Hall,* for appellees.

The court did not err in overruling appellant's demur-
rer to the declaration. The declaration certainly set up
a contract sufficient to uphold a judgment, and if it did,

then it was not subject to a general demurrer. One objection raised to the declaration was that it did not show, on its face, that appellee gave appellant written notice that it had accepted the orders. It is our contention that this is not necessary to be charged in the declaration in any event, but would be a matter of proof purely, but the declaration does allege that the plaintiff "filed and accepted" said orders, and it further alleges that two cars of veneer were cut and delivered to appellee on said contract, and appellee received and paid for same, and this allegation, if true, is enough to establish *prima facie,* that all things necessary and all precedent requirements to a valid contract had either been done or waived and that a valid contract had been made.

Appellant's next contention is that the declaration does not show a meeting of the minds of the parties. Again we say that it certainly does show facts from which the only reasonable inference is that the parties were agreed on every particular. The only matter of difference was as to whether there should be one carload per week or two carloads per week. Appellee offered twenty-five cars or less. Appellant countered with an offer to take ten cars to be shipped two cars per week. This was on September 4th. September 7th appellee accepted appellant's counter-offer for ten cars but said would ship one per week. September 13th, which was six days after the appellee's letter of the 7th, appellants sent out orders for ten cars. It is certainly not an unreasonable inference that these orders were sent out in the light of and after receipt of appellee's letter of the 7th, limiting shipment to one car per week. And certainly this would be a matter of proof and not pleading, and the proof shows that appellant had received appellee's letter of the 7th of September before the orders were sent out on the 13th. See record p. 81, letter from appellant to appellee where reference is specifically made to this letter of September 7th.

Appellant's claim that the declaration shows on its face that appellees breached the contract, in that they did

not begin to ship immediately after receipt of orders. Again we say the time when shipment is to be made is not essential to a valid contract, and is therefore a matter again of proof and not of pleading. The question being either what is customary or what is reasonable.

There was no error in the trial court admitting oral evidence that the board measure of the orders, exhibits "A" to "M" inclusive, approximated ten cars of veneer. This proposition is too plain for argument, and we shall not take up the time of the court further on that proposition.

There was no error in the action of the court in overruling defendant's objection to the shipment of any payment for the two cars of lumber first shipped. This testimony is admissible for a number of perfectly good and valid reasons.

First, it corroborates appellee's testimony that there was a contract, and that appellant recognized that there was a contract. It tends to show that appellees had waived "prompt acknowledgment of order and statement of shipping date." It may not prove anything positively and absolutely in issue, but it does throw some light on the matter and was properly permitted to go to the jury for whatever light it did throw on the contract.

Appellant's other assignments of error are but restatements of those already discussed, none of which in our judgment constitute reversible error. We therefore respectfully submit that the case should be affirmed.

COOK, J., delivered the opinion of the court.

The Price Veneer & Lumber Company, appellee, commenced this suit by attachment against the Pioneer Box Company, appellant, on the ground that it was a foreign corporation, and indebted to the appellee in the sum of three thousand dollars, the purchase price of two cars of veneer, and from a judgment for the sum of two thousand six hundred twenty-seven dollars and forty-seven cents, this appeal was prosecuted.

The alleged contract upon which the declaration was based appears in certain correspondence between the parties. On September 2, 1920, the appellant wrote appellee as follows:

"If you are in a position to take on some extra orders, we would like to have you quote us three-sixteenths and one-fourth inch rotary cut lumber.

"We would like to place orders for shipments at regular intervals and if you can furnish us a portion of your production, we would like to figure with you. At present, we are getting more veneer than we are consuming but some of the mills are small and are not as desirable as mills like yours."

Appellee replied to this letter by telegram, dated September 3, 1920, and reading as follows:

"Quote to-day twenty-five cars or less, two cars per week seventy-two fifty (72.50) quarter inch seventy-five three sixteenths Association rules governing up to fifty-six long and sixteen wide."

On September 4, 1920, appellant wrote appellee in reply:

"We are in receipt of your telegram of the 3d quoting us seventy-two dollars and fifty cents on quarter inch and seventy-five dollars on three-sixteenths B. M., f. o. b. Columbia.

"Our E. St. Louis plant will mail you orders for ten cars to be shipped at the rate of two cars a week.

"Before you have completed these ten cars the chances are that we will place more orders but do not think it advisable to buy twenty-five cars on the present market."

On September 7, 1920, appellee wrote appellant as follows:

"Yours of the 4th received. Will say if only accepting ten cars, will contract to ship one or more cars per week as we can place other fifteen cars elsewhere, and they will be wanting some stock along with yours, possibly you will get two per week according to the good or bad luck we

have, as you know the ups and downs we sometimes have from your own experiences."

On September 13, 1920, appellant's East St. Louis office forwarded to appellee thirteen purchase orders for veneer, these various orders being identical in form except in the quantities, material, and price specified, and each of them containing the following notation:

"Acknowledge order promptly and state shipping date."

Appellee received and filed these orders, but did not acknowledge receipt thereof or make any reply thereto, and on October 19, 1920, appellant wrote appellee canceling the orders, and saying:

"With reference to the ten-car order of box stock placed with you the first of September on checking up, we find that up to date, you have not made shipment of any of the stock: In the meantime, we have been making very strenuous efforts to get our sheds filled up for the winter and have been obliged to buy again the ten cars which we had contracted from you.

"If you will refer to your letter of Sept. 7th, you will find that you promise at least one car per week, with a possibility of two cars. Inasmuch as you have not started shipment, we will ask that you kindly cancel our order which you still have."

On October 21, 1920, appellee wrote appellant as follows:

"Yours of 19th received and somewhat surprised in your cancellation of ten cars that you purchased from us, but we cannot accept your cancellation as we are now making your stock and when we start shipping we will give you one, two, or more cars per week as per our contract with you.

"At present we have two cars of your stock out and ready for shipping which will be shipped as soon as we can secure cars for same."

On October 23, 1920, appellant wired appellee:

"We will not accept shipment from you. Letter following."

And on the same date appellee replied by wire:

"Your telegram received. One car your stock loaded and other car loading. Must ship these. Answer."

On October 23, 1920, appellant wrote appellee as follows:

"We are in receipt of your letter of Oct. 21, which is in reply to our letter of the 19th, asking you to cancel our order for ten cars given to you about the first of September.

"Had you shipped these cars when you agreed to, we would have been glad to accept them, but conditions have changed now and business has dropped off and we are not in position to take on another car of veneer. At present our E. St. Louis plant is embargoed, due to the fact that we have so many cars in transit and in the yard and our Crawfordsville plant has about seventeen cars in transit and only enough room to store five of these.

"For the above reasons it is impossible for us to accept any shipments from you and we must ask that you comply with our letter of the 19th and cancel this order for ten cars. . . . . And if you ship us any veneer we will not accept it.

"We regret very much to be so positive in this statement but as the conditions are just as we have stated we cannot take on any more veneer."

On October 25, 1920, appellant wired appellee:

"You can ship the two cars of veneer."

And this telegram was followed by a letter dated October 26, 1920, saying:

"We are in receipt of your telegram in which you state that you have one car of our stock loaded and another car ready to ship. We have wired you, you can ship the two cars of veneer.

"It was not our intention to keep you from shipping any stock that you might have cut on our order, but we did not want you to cut any stock on the orders we placed with you if they were not in the process of manufacture.

"When you did not ship on our order that we gave you approximately two months ago, we took it for granted that

you were not in need of orders and had more profitable business."

There was additional correspondence between the parties, but we do not deem it material to a decision of the questions now presented. The two cars referred to in the last two telegrams herein set out were shipped, one on October 23, 1920, the other on October 26, 1920, and these cars were received and promptly paid for by appellant. On November 6, 1920, and November 13, 1920, the two cars sued for were shipped, and these two cars were refused by appellant. Later, under instructions from appellee, they were sold by the railroad company for freight and demurrage charges.

There are numerous assignments of error, but, under our view of this case, it will only be necessary to consider the assignment based upon the action of the court in refusing a peremptory instruction for appellant.

We do not think the judgment of the court below can be upheld either on the law or the facts. A detailed statement of the facts, other than the correspondence herein set out, is not material to a decision of the question involved. The initial telegram of appellee offered to ship two cars per week, Association rules governing up to fifty-six long and sixteen wide. Paragraph 4 of the Association rules which were given in evidence, provides that—

"All orders and contracts shall be written and signed by both parties, or signed by the buyer and accepted in writing by the seller."

In reply to appellee's initial offer appellant indicated a purpose to accept ten cars to be shipped at the rate of two cars per week. Appellee replied with a counter proposition to furnish ten cars at the rate of one or more cars per week, and to this offer appellant replied by forwarding orders for certain quantities of the lumber, but expressly requiring that these orders should be acknowledged in writing and the shipping date fixed, thereby constituting an acceptance of the orders. Appellee did not acknowledge receipt of these orders, or communicate in any manner its

acceptance of them, or intention to accept them. The contention of appellee that its intention to accept and its acceptance of the orders were evidenced by its acts in filing the orders and commencing the preparation of the stock called for thereby cannot prevail for the reason that an acceptance must be evidenced by some conduct or acts actually communicated to the offerer.

"The mere intention to accept is not sufficient if no notice of such intention is communicated to the proposer within a reasonable time or in accordance with the terms of the offer." Elliott on Contracts, p. 50.

The appellant had the right to require an acknowledgment and acceptance in writing, and a fixation of the shipping dates, an essential matter which the negotiations had left uncertain and unsettled. For more than thirty days after the orders were forwarded appellee remained silent, his acceptance not being indicated either by writing or the shipment of any part of the lumber ordered. In the absence of an acceptance of the orders in accordance with the terms thereof, the appellant, on October 19, 1920, thirty-six days after the orders had been mailed to appellee, exercised its right to countermand the orders, and thereafter it was under no contractual obligation to accept any shipment from appellee. The acceptance of the two cars which were shipped on October 23d and 26th was the result of further negotiations in reference to these particular cars, and there was a distinct understanding that these cars would be accepted solely for the purpose of relieving appellee of the stock already manufactured to apply on these orders, and that the cancellation of the orders was not waived as to further shipments. After the countermand of these orders, before acceptance thereof, there was no obligation on appellant to receive further shipments thereon, and no liability for the purchase price of the two cars shipped in November, and for which this suit was brought. The judgment of the court below will therefore be reversed, and a decree entered here for appellant.

*Reversed, and judgment for appellant.*