**McLEAN et al. v. TEXAS CO.**

No. 8986.

Circuit Court of Appeals, Fifth Circuit.

May 13, 1939.

Rehearing Denied June 8, 1939.

Geo. E. Holland and E. E. Easterling, both of Beaumont, Tex., and Ocie Speer, of Austin, Tex., for appellants.

C. R. Wharton and John C. Jackson, both of Houston, Tex., and William E. Allen and P. O. Settle, both of Fort Worth, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment for the appellee in an action for the recovery of 5% of the value of oil and gas purchased by the appellee under the terms of a division order providing for such payment, but to which appellants were not parties.

In 1881, Martha D. Janes, being the owner of a tract of land consisting of 152 acres in Jefferson County, Texas, sold a right-of-way easement, 200 feet wide across the northeast end of the same, to the Sabine and East Texas Railroad Company, which was later acquired by the Texas and New Orleans Railroad Company. The northeast 52 acres became the property of Hebert and Chaison, and title to this tract, subject to the right-of-way, was vested in them when the latter died. The tract was partitioned between Hebert and the successors of Chaison by being divided into lots numbered 1 to 8 inclusive, the odd-numbered lots being conveyed to the Chaisons, and the even-numbered lots being conveyed to Hebert. The descriptions in the deeds gave the northeast boundary of the right-of-way for the southwest boundary of lots 3 and 4, and the southwest boundary of the right-of-way for the northeast boundary of lots 5 and 6. Between the date of the partition deeds and June, 1926, there were numerous sales of the lots so described to various parties. The owners of the lots, their lessees, and persons claiming under them may conveniently be referred to as the owners of the lots.

In January, 1926, on the theory that the partition deeds did not divide the subsurface or minerals under the right-of-way, and that subsequent transfers did not convey them, appellants acquired an oil-and-gas lease thereon from Hebert and the Chaisons, the lessors reserving a 1/16 or 6¼% royalty, payable from the oil pro-

duced. The surface being in the exclusive control and possession of the T. and N. O. Railroad Company, appellants obtained a similar lease from it, a royalty of 8¾% being reserved. Thereafter, the rights thus acquired were transferred by appellants to the Rio Bravo Oil Company, subject to the royalties reserved by the lessors in the two leases mentioned above, and, in addition thereto, appellants reserved unto themselves an overriding royalty of 5% under the terms and conditions enjoyed by the original lessors.

Asserting their claim to ownership of, and right to capture and remove the minerals under, the property described in the above-mentioned instruments, the Rio Bravo Oil Company entered upon the right-of-way and began drilling operations. Thereupon, injunction suits were instituted in the state court by the owners of the lots, claiming that the partition deeds did divide the subsurface and minerals under the right-of-way, and that so much as was included within the extensions of the intersecting boundaries to the center line thereof was a part of the particular lot, or part of lot in question. Temporary injunctions were granted, and the drilling operations stopped.

The lands brought into question in the injunction suits were located in a proven oil field, and, in order to prevent the oil under the right-of-way being taken through other wells, the parties entered into a contract, hereinafter called an operating agreement, whereby it was agreed that the Rio Bravo Oil Company and other defendants, including appellants, should proceed with their operations and produce whatever oil could be obtained without delay.

The operating agreement recited as its purpose the preservation of the rights of the parties thereto, and provided that, if the final judgments by the courts of last resort should be that the owners of the lots were entitled to permanent injunctions, then said owners, as plaintiffs in the then pending litigation, should be entitled to the oil produced, or its value with 6% interest thereon from the time of production. It further provided that, if upon the final determination of the matters it should be decreed that the owners of the lots were not the owners of the oil, the same should be the property of the defendants as their interests might appear. It thereupon provided for the dissolution of the temporary injunction, and provided that none of the substantive rights of the parties should be affected except as therein stipulated.

After actual production of oil was begun, the oil involved in this litigation was sold to appellee herein under the terms of an instrument called a division order. Under the terms of this instrument, appellee obligated itself to take the oil from the leasehold premises, and to give credit therefor on its books to the Rio Bravo Oil Company to the extent of 80% of the oil run, to the T. and N. O. Railroad Company to the extent of 8¾%, to appellants to the extent of 5%, and to other parties to the extent of 6¼%. The instrument was in the form of an order addressed to appellee directing the disposition aforesaid, and was signed by the Rio Bravo Oil Company and the T. and N. O. Railroad Company, but not by appellants or any other party in interest. It obligated the signers (who guaranteed that they were legal owners of the oil) to furnish abstracts and other evidence of title on demand, and, in default thereof, authorized appellee to hold the oil or its proceeds without interest until satisfactory indemnity should be furnished. Pursuant to this contract, large quantities of oil were produced and run to appellee, the latter holding the proceeds of the oil pending the final determination of the litigation.

The suits between the owners of the lots and the claimants under the oil-and-gas leases to the right-of-way property above referred to were finally decided in favor of the former, it being held that the owners of the lots were the owners of the right-of-way land subject to the easement, and judgment was entered accordingly.

Prior to the institution of the case at bar, the Rio Bravo Oil Company and the T. and N. O. Railroad Company applied to appellee for the payment of their respective shares of the proceeds of the oil (80% and 8¾%), and furnished satisfactory indemnity therefor. Thereupon, a settlement was had with them according to the terms of the division order. Thereafter, appellants applied to appellee for payment to them of their recited interest of 5% in the proceeds, and offered security therefor which, for the purposes of this appeal, must be considered to have been satisfactory to appellee, except that appellants could not comply with the guarantee of the signers that they were the legal owners of the oil. Appellee refused to accept the security and to pay the pro-

ceeds. This action was brought in the district court, and, on motions for summary judgment by both sides, the facts stated in the motions being without material conflict, judgment was rendered in favor of appellee.

The questions determinative of this appeal are whether or not appellants, not being parties to the division order, may maintain an action thereon, and may invoke the security provisions thereof, and repudiate the guarantee that the signers of the division order were legal owners of the oil, it now appearing from the operating agreement and the judgment of the state court that they did not own any interest in the oil sold to appellee. The case presented here is whether or not appellee is obligated to pay appellants, under the terms of the division order, for the oil it acquired thereunder, despite the fact that the production contract, and judgment entered pursuant thereto, settled once and for all that appellants owned no interest in the oil.[1]

Since appellants must base their demand upon the division order, to which they can claim privity only as third-parties beneficiaries, it becomes important to analyze that instrument. By it, appellee is directed to credit the oil or proceeds thereof on its books to the parties named, including appellants, whose interest is recited as 5% of the amount received. Considered as a covenant for their benefit, subject to a guarantee of ownership, this provision was for the segregation of the royalty retained by appellants in their assignment of the leases by Hebert, the Chaisons, and the T. and N. O. Railroad Company to the Rio Bravo Oil Company. By it, the Rio Bravo Oil Company provided for payment by appellee to appellants for so much of the oil taken from the leasehold as would belong to appellants under the assignment. It may be noted that the obligation thus assumed was no greater than that which would have been imposed by implication, had it been adjudicated that appellants and their associates, instead of the owners of the lots, were the owners of the minerals in place. But the division order, read as a whole, does not impose an obligation to pay appellants eo nomine. By the last paragraph of the order, it was provided that appellee would become the owner of the oil run, payment to be made therefor to the then owners or their assigns in proportion to their respective interests as shown in the first paragraph. It is admitted that credit has been given on the books of appellee. It is the payment provision of the contract that appellants now seek to enforce. True, they are the persons designated as owners of 5% in the first paragraph, but it now develops that they are not the owners, ownership having been settled in the Weed case, 300 S.W. 171.

Moreover, the division order carries a guarantee of ownership, and provides that satisfactory abstracts or evidence of title be furnished, or, in default thereof, that satisfactory indemnity shall be given. This covenant is by the signers of the order, not by appellants, but the latter may not claim the benefit of the covenant made for them and reject its burdens. Thus, we have the case of parties claiming the purchase price of oil which has been adjudicated to be the property of another. They are claiming it under a covenant made for their benefit, which included a guarantee by the signers of ownership by appellants. Parties who seek to enforce a contract made for their benefit are bound by the terms and conditions thereof. Appellants are therefore obligated to give satisfactory indemnity in default of satisfactory abstracts or evidence of title. All parties now know that satisfactory abstracts or evidence of title cannot be furnished by appellants. It is, therefore, impossible for them to furnish satisfactory indemnity against the happening or existence of a known fact. It is useless to tender a bond which the parties know will be breached as soon as it is accepted, and the law does not require the doing of an idle thing. The division order must be read against the background of the operating agreement and the judgment in the litigation pending at the time of its execution. The operating agreement ratifies, in anticipation, the judgment to be entered in each case. Under it, the injunctions were dissolved, the well was completed, the oil produced and sold, and the claims of the parties were transferred to the proceeds. The naked power to produce and sell the oil was vested in the defendants in the injunction suits by the operating agreement; but the assignment of their leases by appellants to the Rio Bravo Oil Company conveyed to it their

1 Rio Bravo Oil Co. v. Weed, Tex.Civ.App., 300 S.W. 171; Rio Bravo Oil Co. v. Hebert, Tex., 106 S.W.2d 242.

right to go upon the premises and produce the oil. In the exercise of this right, the Rio Bravo Oil Company became bound by the operating agreement to account for the proceeds to whoever should be adjudged to be the owners of the oil. The final decree fixed the rights of the parties under the operating agreement, and designated the owners of the lots as the parties to whom the Rio Bravo Oil Company was bound to account for the proceeds.

The operating agreement and the division order must be considered together and in pari materia. When so considered, they are aleatory in so far as they provide for payment of the proceeds of the oil. The adjudication of the claim of ownership by appellants of 5% of the oil is the fortuitous event upon which their claim becomes absolute or is extinguished. When so considered, the operating agreement operates as a transfer, in futuro and on condition, of the proceeds of oil then assumed by them to be their property. The contemplated decree, which would determine the litigation, would determine the ownership of the oil, but would not and could not direct the disposition of the proceeds. The first paragraph of the division order segregates the interest assumed to be theirs, but does not direct its payment to them. The last paragraph directs its payment to appellants or their assigns. By the terms of the operating agreement, appellants agreed that their interest in the proceeds of the sale of the oil should follow the adjudication of the ownership of the oil. Under the decree finally rendered, the owners of the lots, adjudged to have been the owners of the oil in place, became the assignees of the proceeds by virtue of the terms of the operating agreement. By the last paragraph of the division order, they are made the beneficiaries to whom the proceeds are to be paid. Thus, in so far as the division order confers rights and benefits upon third parties, it now affirmatively appears that appellants have been divested of the substantive rights by which they might claim membership in the class of persons to be benefited. The fortuitous circumstances having removed any possibility of appellants' coming within the benefits of the aleatory provisions made for the protection of the claimants of the oil, so that they can establish no substantive rights as third-parties beneficiaries, and not being parties to the contract, they have failed to establish any ground upon which they should recover in this action. Barrett v. Henrietta National Bank, 78 Tex. 222, 14 S.W. 569; Norton v. W. L. Macatee & Sons, Tex.Com.App., 16 S.W.2d 517; Southern Surety Co. v. Weaver Bros., Tex.Com. App., 56 S.W.2d 634; Continental Bank & Trust Co. v. Hartman, Tex.Civ.App., 129 S.W. 179; United States Fidelity & Guaranty Co. v. Thomas, Tex.Civ.App., 156 S.W. 573; Dallas Power & Light Co. v. Carrington, Tex.Civ.App., 245 S.W. 1046; City of Dallas v. Rutledge, Tex.Civ. App., 258 S.W. 534; Hardin Lumber Co. v. Shepherd, Tex.Civ.App., 40 S.W.2d 215; Grand Prairie Gravel Co. v. Trinity Portland Cement Co., 5 Cir., 295 F. 140; Williston on Contracts, Revised Edition, Sec. 888.

There being no basis upon which appellants may maintain this action against appellee, the judgment of the district court is affirmed.