## LYLE CASHION CO. v. McKENDRICK.
### Civ. A. No. 2886.

United States District Court
E. D. Louisiana, New Orleans Division.
May 25, 1951.

Bloch, McCloskey & Dennery, Moise W. Dennery, Fernando J. Cuquet, Jr., New Orleans, La., Bernard W. Chill, Jackson, Miss., for plaintiff.

Milling, Godchaux, Saal & Saunders, H. H. Hillyer, Jr., New Orleans, La., E. G. Truly, Jr., S. B. Laub, Natchez, Miss., for defendant.

WRIGHT, District Judge.

Plaintiff in this action seeks a declaratory judgment against the defendant declaring that the defendant has no interest in any "leases, royalty, etc.," acquired by plaintiff within six months following March 1, 1950 within a radius of ten miles of a well site described in an agreement entered into between the parties on April 29, 1950. The defendant opposing the demand for declaratory judgment asserts that the plaintiff and defendant were engaged in a joint venture in the purchase of leases and the drilling of wells in Jefferson County, Mississippi, and that the defendant is entitled to be recognized as the owner of an undivided one-half interest in any leases or royalties the plaintiff may have in the area. In the alternative, the defendant contends that in any event he is entitled to be compensated on a quantum meruit basis for his contributions in obtaining the leases and royalties in question.

In the early part of 1950 the defendant interested the plaintiff in taking a "farm-out" from Messrs. Claypool and Proctor of leases known as the Pure Oil Company leases. Although this farm-out was taken by the plaintiff in its name, it is admitted that the defendant had a half interest therein. The farm-out required the drilling of the so-called Allen well which plaintiff and defendant jointly drilled and which resulted in a dry hole on May 12, 1950.

Prior to the drilling of the well, plaintiff and defendant entered into a written contract dated April 29, 1950 in which they agreed to share jointly the cost of drilling the well and in which was included the following provision: "Should any Party hereto acquire any leases, royalty, etc., within a radius of ten (10) miles of the well site within six months following March 1, 1950, the other Party hereto may have an option of purchasing, within the said six months period, one half (½) of the other Party's purchase, at its net cash cost (exclusive of traveling, meals or hotel expenses)."

As a result of the drilling of the Allen well the defendant is indebted unto the plaintiff for one-half the cost to them of drilling the well, or approximately $6,000. Although the defendant has been unable to pay plaintiff, the plaintiff has assured himself by interview with defendant's accountant that that money and more will be forthcoming out of litigation in which the defendant is presently involved in another court.

After the Allen well was abandoned, plaintiff and defendant immediately sought to put together another well deal in the vicinity of the Allen well, information having been obtained from its drilling indicating that such additional well should be drilled. Both plaintiff and defendant actively sought leases to make up a drilling block for the new well as well as dry hole money and any other contributions which might make the drilling of the second well less onerous to them from a financial standpoint. As a result of the efforts of plaintiff additional acreage from the Pure Oil Company was secured. Through their combined efforts acreage was secured from the Robert Oil Company. Defendant on his own obtained the so-called Reason lease and had it transferred to the plaintiff as was done with the original Pure Oil farm-outs. Thus the drilling block for the new well was made up of the Robert Oil Company lease, the Reason lease, the original Pure Oil farm outs and the additional acreage

obtained from Pure Oil by the plaintiff. Part of the consideration given for the additional leases was an interest in the Pure Oil farm-out which is owned in individion by both plaintiff and defendant. There was no cash consideration involved in obtaining any of these leases except the obligation, of course, on the part of the plaintiff to drill a well.

Robert Oil Company obtained dry hole letters for the new well from Atlantic Refining Company and Kirby Petroleum Company totalling $7,000 of contributions. The defendant, in spite of his efforts, produced no contributions to the drilling of the well. He apparently felt that one of the reasons he was not able to conclude arrangements for dry hole letters was because the plaintiff had ceased to furnish him information concerning the progress being made by him and by others toward financing the well. Consequently, he addressed a letter to the plaintiff on August 15, 1950 in which he advised him of the status of his negotiations concerning the obtaining of the Reason lease and asked for information regarding the financing of the well. The plaintiff's president testified that he could not recall ever having received this letter of August 15th but the evidence shows that the letter was mailed to him and was not returned to the sender. Atlantic Dredging & Construction Co. v. Nashville Bridge Co., 5 Cir., 57 F.2d 519. At this point it may be well to observe that the credibility of both the president of the plaintiff company and the defendant is subject to considerable question, particularly the credibility of the defendant. It has become necessary therefore to depend on documentary evidence and the testimony of other witnesses in determining what the facts in this case really are.

In any event plaintiff did not answer defendant's letter of August 15th and defendant again wrote plaintiff on September 2, 1950 stating that he was already indebted to the plaintiff on the Allen well and that he was afraid that the proposed well would not receive sufficient contributions to cover the cost of drilling, making it necessary for the plaintiff and the defendant to bear the difference. He suggested in this letter of September 2nd that because of his continued poor financial condition that he be allowed by the plaintiff to take a lesser interest in the new well than had originally been contemplated in order that he would not be responsible for any cost in connection with the drilling of the well. This letter likewise was not answered by the plaintiff.

Thereafter plaintiff and defendant had discussions with reference to relieving defendant of any further liability in the deal and arrived at a tentative agreement which the defendant accepted but which the plaintiff delayed accepting until the day after the new well known as the Davis well was found to be productive, whereupon defendant refused to go through with the tentative agreement. This litigation followed.

Plaintiff here maintains that it is entitled to a declaratory judgment declaring that the defendant has no interest in the Davis well and the surrounding leases because the defendant did not exercise the six months option provided in the contract of April 29, 1950 to purchase the "leases, royalty, etc.," obtained by the plaintiff within ten miles of the Allen well. It maintains that the defendant having failed to exercise that option is proscribed from claiming any interest in these leases or in the Davis well. The defendant on the other hand claims that he did exercise the option, not by specifically advising the plaintiff that he had, but by his actions from the moment the Allen well was completed as a dry hole.

The defendant maintains further that in the circumstances of this case the plaintiff was under a duty to notify him prior to the time the option expired that it did not consider the actions of the defendant in helping to put together the lease acreage for the drilling of the second well amounted to an exercise of the option under the contract. The defendant further maintains that in any event plaintiff is estopped to deny that defendant did not exercise the option for the reason that plaintiff received the benefits of defendant's efforts and property knowing that said efforts and

property were being contributed pursuant to the contract of April 29, 1950.

The position taken by the defendant is supported by the law and the evidence and he must prevail. In the first place let us consider just what was contemplated by the exercise of the option under the agreement. Plaintiff and defendant contracted to drill a well together and as is customary in such agreements included therein the option clause in order to prevent one party or the other from obtaining leases or royalties in the immediate area of the well without giving the other party an opportunity to participate in such leases or royalties. It is common knowledge in the oil business that the drilling of one well, though a dry hole, often leads to the drilling of another in the immediate vicinity. A party to the drilling agreement therefore protects himself by the insertion in the drilling agreement of the option clause.

When the Allen well was abandoned as a dry hole both the plaintiff and the defendant immediately decided to drill another well in the area, and began a common effort to obtain acreage for a drilling block and contributions to overcome the cost of the drilling. There cannot be the slightest doubt that when the plaintiff with the help of the defendant obtained the Robert Oil Company lease and gave as part payment therefor the 1/32nd overriding royalty in the first Pure Oil assignment, which assignment was jointly owned by the plaintiff and the defendant, that the defendant intended to and was in fact exercising his option to participate with the plaintiff in the new acreage and in the new well and that the plaintiff knew he was so doing. It is also obvious that when the defendant obtained the Reason lease, key lease in the drilling block, at his own expense without the help of the plaintiff and had that lease transferred to the plaintiff, that the defendant was exercising his option to continue his joint activity with the plaintiff and the plaintiff knew it. Both these transactions were consummated well within the six month option period.

The option clause provides that the option may be exercised by purchasing the "leases, royalty, etc.," at the "net cash cost". There was no "net cash cost" involved in obtaining any of the additional leases which the plaintiff acquired within the ten mile radius. Under the circumstances what could the defendant do to exercise his option other than help the plaintiff obtain the leases? Under the circumstances it obviously would have been superfluous for the defendant to say to the plaintiff: "I accept the option." Every act of the defendant, the benefit of which was accepted by the plaintiff, showed that he had exercised the option, and every act of the plaintiff in receiving the benefits of the defendant's efforts showed that he knew that the option was being exercised.

An option is a continuing offer which may be accepted or exercised by word, actions or conduct just as any other offer may. Exercise of the option or the acceptance of the offer may be communicated to the offeror by conduct or actions. Pioneer Box Co. v. Price Veneer and Lumber Company, 132 Miss. 189, 96 So. 103, 29 A.L.R. 1349; Restatement of the Law of Contracts, Sec. 21.

The plaintiff having received the benefit of defendant's efforts and property in obtaining Robert Oil and Reason leases is estopped to deny the existence of the enforcible contract created by the exercise of the option by the defendant. McLean v. Texas Company, 5 Cir., 103 F.2d 989.

In Fanning v. C. I. T. Corporation, 187 Miss. 45, 192 So. 41, 43, the Court said: "* * * The rule is that acceptance of the contract as binding upon a party may be shown by his actions, and any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it, is as binding on him as had he endorsed his assent in formal writing."

From an equitable standpoint it would seem that the result reached in this case is unfair to the plaintiff who drilled the wells and advanced the money therefor. It must be remembered, however, that plaintiff was introduced to this entire trans-

1012

action by the defendant; that it continually sought and accepted the defendant's aid in obtaining the leases involved and looked to the defendant for half the cost to them of drilling the two wells. It is true, of course, that even at the time of suit the defendant had not liquidated his indebtedness to the plaintiff, but it is clear from the testimony that plaintiff satisfied himself of the financial responsibility of the defendant during the time they were promoting the second well. There is nothing in the record to indicate that the plaintiff had released the defendant from liability for his share in drilling the Davis well up to the very time it was brought in. This case portrays just another oil deal in which the party in whose name the leases are taken, after the well has been successfully brought in, would like to relieve himself of an encumberance he was glad to use in putting the deal together.

Let a judgment be prepared in accordance with these findings.