**HOUSTON DAIRY, INC.,**
Plaintiff-Appellant,

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,**
Defendant-Appellee.

No. 80–3065.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 1, 1981.

Darden, Sumners, Carter & Trout, Lester F. Sumners, New Albany, Miss., for plaintiff-appellant.

Grady F. Tollison, Jr., Mary Ann Connell, Oxford, Miss., for defendant-appellee.

Before GOLDBERG, AINSWORTH and RUBIN, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal from a Mississippi diversity action in which appellant Houston Dairy, Inc. attempted to recover $16,000 sent to appellee John Hancock Mutual Life Insurance Company as a "Good Faith Deposit" on a loan application which Houston Dairy claims never became binding. At the conclusion of the nonjury trial, the district court ruled that there was a binding contract between the parties and that the $16,000 deposit represented valid, liquidated damages forfeited by Houston Dairy when it breached the contract. We reverse.

## I. Facts

John Hancock mailed a commitment letter to Houston Dairy on December 30, 1977 in which it agreed to lend Houston Dairy $800,000 at 9¼% provided that within seven days Houston Dairy would return the commitment letter with a written acceptance and enclose either a letter of credit or a cashier's check in the amount of $16,000. The commitment letter stated the $16,000 was a "Good Faith Deposit" and was the appropriate measure of liquidated damages to be awarded John Hancock should Houston Dairy default. Dr. Dyer, president and principal shareholder of Houston Dairy, did not execute the letter until eighteen days later, on January 17, 1978. Along with the letter, Houston Dairy mailed a $16,000 cashier's check.

Upon receiving the returned commitment letter on January 23, an agent for John Hancock mailed the cashier's check to the John Hancock Depository and Service Center in Champaign, Illinois, for deposit and sent the loan-closing attorney, Harvey Henderson, the necessary information to close the loan. Meanwhile, Dr. Dyer delivered a copy of the commitment letter to Houston Dairy's attorney and asked him to call Henderson to ascertain his fee for closing the loan. On January 28, the two attorneys talked and agreed to the method they would use to close the loan and the manner

in which the fee would be charged. However, on January 30, Houston Dairy was able to obtain a 9% loan from a state bank. Houston Dairy then requested a refund of its $16,000 deposit, which was refused by John Hancock.

In the district court, Houston Dairy contended that the return of the commitment letter constituted a counter offer since the seven-day time period for acceptance had expired, that John Hancock never communicated its acceptance of the counter offer, thus allowing Houston Dairy to revoke the counter offer, which it did on January 31. Therefore, the argument proceeds, no contract was ever formed and Houston Dairy was entitled to a refund of $16,000.

The district court disagreed, finding that John Hancock had both waived the seven-day limitation and validly accepted a counter offer. Accordingly, the court held that the parties had entered into a binding contract and awarded John Hancock the $16,000 deposit as valid, liquidated damages for breach of the loan agreement.

## II. Was there a contract?

It is fundamental that a contract is formed only upon acceptance of an offer. *Couret v. Conner,* 118 Miss. 598, 79 So. 230, 232 (1918). Just as basic is the principle that an offeror is free to limit acceptance to a fixed time period. 1 A Corbin, Contracts § 35 (1963); 1 S. Williston, Contracts § 76 (3d ed. W. Jaege, 1957); Restatement of Contracts § 40 (1932). Once the time period has expired, a belated attempt to accept would be ineffective. However, such an untimely attempt to accept normally constitutes a counter offer which would shift the power of acceptance to the original offeror. 1 Corbin § 74; 1 Williston §§ 53, 93; Restatement § 73. Additionally, acceptance of a counter offer is established only by conforming to the rules governing acceptance, not a separate theory of "waiver and ratification." *Kurio v. United States,* 429 F.Supp. 42, 64 (S.D.Tex.1970).[1]

---

1. In *Kurio,* the court considered an issue in contract law similar to the instant case. An offer had been terminated by lapse of time and a belated attempt to accept the offer was construed as a counter offer. As in the present case, an argument was made that the original offeror could waive the untimeliness of the acceptance. After outlining the basic require-

It is therefore clear in the instant case that upon expiration of the seven-day time period, John Hancock's offer terminated. Thus the action taken by Houston Dairy in signing and returning the commitment letter subsequent to the termination of the offer constituted a counter offer which John Hancock could accept within a reasonable time.

In Mississippi, the courts have long recognized that for acceptance to have effect, it must be communicated to the proposer of the offer. *See Pioneer Box Co. v. Price Veneer & Lumber Co.*, 132 Miss. 189, 96 So. 103, 105 (1923). John Hancock contends it did accept Houston Dairy's counter offer and that the acceptance was communicated to Houston Dairy.

According to John Hancock, depositing Houston Dairy's check was itself sufficient to operate as communication of its acceptance of the counter offer. John Hancock argues that its silence plus retention of Houston Dairy's money constituted acceptance and notification. Indeed, Mississippi has specifically recognized the validity of acceptance by silence within the guidelines laid down in Restatement § 72.[2] *See Old Equity Life Insurance Co. v. Jones*, 217 So.2d 648, 651 (Miss.1969); *Ammons v. Wilson & Co.*, 176 Miss. 645, 170 So. 227, 228 (1936). However, the present facts do not fit within these guidelines. Houston Dairy neither had previous dealings nor had otherwise been led to understand that John Hancock's silence and temporary retention of its deposit would operate as acceptance. In addition, Houston Dairy had no knowledge that its check had been deposited in John Hancock's depository. Since Houston Dairy sent a cashier's check, it could not have known the check had even been deposited unless notified by John Hancock or its bank. No such notice arrived from John Hancock and none is required from the bank.

The Mississippi Supreme Court held in *L. A. Becker v. Clardy*, 96 Miss. 301, 51 So. 211 (1910) that the mere depositing of a check was insufficient to constitute acceptance of an offer. There, an offeror sent a $100 downpayment along with its order for merchandise to the offeree. As was its policy, the offeree immediately deposited the check in its account, which was later paid in due course by the bank upon which the check was drawn. However, the offeree subsequently mailed a letter to the offeror rejecting the offer and enclosed a check for $100. The court held that upon receipt of the order and downpayment, the offeree was "entitled to a reasonable time in which to examine and determine whether it would accept or reject [the order]. . . . Deposit-

ments for formation of a contract and acceptance of a counter offer, the court dismissed the "waiver" argument stating that the original offer cannot be revived once it is terminated. The original offeror may only renew the original offer or accept the counter offer implicit in the defective acceptance. Consequently, once an offer's time period has terminated, a contract may be formed only by formal acceptance of the counter offer and not by a theory of waiver of the expired time limitation. 429 F.Supp. at 63–65.

2. Restatement § 72 states as follows:

§ 72. Acceptance by Silence or Exercise of Dominion.

(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases and in no others:

(a) Where the offeree with reasonable opportunity to reject offered services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.

(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.

(c) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction is intended by the offeree as a manifestation of assent, and the offeror does so understand.

(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept.

ing the check for collection, therefore, did not constitute acceptance of the order." *Id.*, 51 So. at 213.[3]

John Hancock also contends that Houston Dairy was notified of its acceptance in the conversation between the attorneys for both parties on January 28. However, a review of the testimony concerning that conversation shows no communication of acceptance. Indeed, John Hancock's closing attorney testified that at the time of his conversation with Houston Dairy's attorney, he had not received the executed commitment letter and had no knowledge a counter offer had even been made. His conversation only concerned the method to be used to close the loan and the distribution of the fee to be charged, not acceptance of the counter offer. Houston Dairy cannot be deemed to have knowledge of John Hancock's acceptance simply by requesting and receiving information on the procedures for closing a loan should an agreement be reached.

### III. Conclusion

In summary, Houston Dairy could not accept John Hancock's offer once the time period had lapsed. Thus, when Houston Dairy executed and returned the commitment letter several days late, it was proposing a counter offer which John Hancock could either accept or reject. Since the actions and policies of John Hancock were unknown to Houston Dairy, mere silence was not operative as an acceptance of the counter offer, no communication of acceptance having been received. Houston Dairy therefore was entitled to revoke its counter offer, which it did on January 31. Accordingly, we reverse the judgment of the district court and render in favor of Houston Dairy for the amount of its deposit, $16,000.

REVERSED.

3. John Hancock attempts to distinguish *L. A. Becker* by stating that the offeree in *L. A. Becker* did not have a policy of immediately returning checks on offers it did not wish to accept, as was John Hancock's policy here. With this argument, John Hancock suggests that since the $16,000 deposit was not returned immediately in accord with its policy, then

Houston Dairy had notice the counter offer had been accepted. This argument is valid only if Houston Dairy first had knowledge of John Hancock's policy. Upon a review of the record, we have found no previous dealings or statements that would indicate knowledge by Houston Dairy of John Hancock's policy concerning offers it would not accept.